59 A.3d 1016

**Anthony M. FRAZIER**

v.

**CASTLE FORD, LTD., f/k/a Crystal Ford Isuzu, Ltd.**

**No. 93, Sept. Term, 2011.**

Court of Appeals of Maryland.

Jan. 24, 2013.

Battaglia, J., dissented with opinion in which Harrell, J., joined.

Leslie L. Gladstone (Leslie L. Gladstone, P.A., Baltimore, MD), on brief, for petitioner/cross-respondent.

Douglas W. Biser (Mudd, Harrison & Burch, LLP, Towson, MD), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

McDONALD, J.

Maryland Rule 2–231 allows a plaintiff to prosecute a civil action on behalf of a class of similarly situated persons. In order to do so, the prospective "class representative" must demonstrate that the class members and the claims asserted on their behalf satisfy certain criteria set forth in the rule and that the prospective class representative will "fairly and adequately" represent the class. The circuit court in which the complaint is filed is to determine whether those criteria are met and whether to "certify" the case as a class action "as soon as practicable after commencement of the action."

In this case, we are asked to decide the consequences when a plaintiff seeks to prosecute a case as a class action and the defendant tenders individual compensatory relief to the plaintiff—prior to any determination whether the case may appropriately be brought as a class action. In particular, the following three questions are before us:

1—Does the tender require the court to deny class certification?

2—Is an award of punitive damages foreclosed by the tender of individual compensatory damages?

3—Is an award of attorney's fees to the plaintiff under a fee-shifting provision of the Consumer Protection Act limited to fees incurred before the tender?

For the reasons that follow, we answer each of these questions "no."

**Background**

*Class Action Complaint*

Petitioner Anthony Frazier commenced this action by filing a complaint in the Circuit Court for Montgomery County on July 27, 2007, naming Respondent Crystal Ford Isuzu, Ltd.

("Crystal Ford") as defendant.[1] The complaint alleged that Crystal Ford sold Mr. Frazier an extended warranty for his 2003 Ford Explorer on or about December 23, 2004. According to the complaint, the salesperson told Mr. Frazier that the extended warranty would last for 48 months from the date of purchase or 100,000 miles, whichever occurred first. In fact, the duration of the type of extended warranty sold to Mr. Frazier was calculated from the "build date" of the automobile.[2] As a result, the extended warranty actually expired on October 30, 2006, more than 2 years earlier than Mr. Frazier had been led to believe.

The complaint alleged that, because the warranty expired earlier than promised, Mr. Frazier incurred unanticipated repair expenses when he had his car serviced within the four-year period following purchase of the warranty. According to the complaint, when Mr. Frazier complained to Crystal Ford, the salesperson advised that there was nothing she could do, as the actual terms of the warranty contract measured the four years from the "build date" of the car even though the application for the warranty stated a longer duration. According to the complaint, the salesperson told Mr. Frazier she had sold other extended warranties with the same discrepancy.

Following the discussion with the salesperson, Mr. Frazier retained counsel, who wrote a letter to Crystal Ford seeking compensation for the unexpected repair expenses as well as other repairs anticipated within the four-year period. No response was received from Crystal Ford, and Mr. Frazier filed his complaint two weeks later.

---

1. Subsequent to the events that led to this litigation, Crystal Ford operated under the name "Castle Ford Ltd." For the sake of simplicity, we adopt the same convention as the parties and will refer to the Respondent as "Crystal Ford."

2. Crystal Ford concedes that it erred in explaining the warranty to Mr. Frazier. According to Crystal Ford, due to the number of miles recorded on his car's odometer, Mr. Frazier received a new car warranty that ran from the "in-service" date of the vehicle rather than a used car warranty that would have run from the date of purchase of the warranty.

The complaint asserted two causes of action—one for unfair and deceptive trade practices, in violation of the Consumer Protection Act,[3] and the other for common law fraud. The complaint sought compensatory damages, as well as declaratory and injunctive relief, punitive damages, and attorney's fees.[4] Mr. Frazier purported to bring his action "on behalf of the entire class of persons similarly situated"—described in the complaint as residents of Maryland who had purchased Ford extended warranties from Crystal Ford during the previous four years. The complaint requested, among other things, that the court certify the action as a class action.

Mr. Frazier did not immediately file a motion for class certification, but sought discovery from Crystal Ford concerning warranties Crystal Ford had sold to other customers.

*Tender of Individual Relief*

After the filing of the complaint, Crystal Ford paid to extend Mr. Frazier's warranty through December 31, 2008, approximately four years from the date it had sold him the extended warranty. As a result, Ford ESP North America sent Mr. Frazier a check for the amounts he had paid for the repairs (minus a $100 deductible) during the period that his car would have been covered by the warranty that he had intended to purchase. Mr. Frazier did not cash the check.

*Dispositive Motions*

Crystal Ford filed an answer to the complaint and subsequently filed a motion for summary judgment, a motion to deny class certification, and a motion for a protective order seeking to limit discovery. Mr. Frazier filed a motion to compel discovery. As of the date of the hearing on those motions, Mr. Frazier had not filed his own motion to certify the class.

On February 20, 2008, the Circuit Court issued an oral opinion from the bench in which it granted Crystal Ford's

---

3. Maryland Code, Commercial Law Article ("CL"), §§ 13–301, 13–408.

4. Attorney's fees are available in a private action brought under the Consumer Protection Act. CL § 13–408(b).

motion to deny class certification; and granted in part Crystal Ford's motion for summary judgment, leaving open the issue of attorney's fees for a subsequent hearing.[5] In explaining its decision to deny class certification, the court stated:

[Mr. Frazier] clearly is no longer a member of any class because he's been made whole, so really, he has no interest as far as this court can see to put forward, and to indicate that he is acting on behalf of a class.

I also agree with the defendant's position that the, there's not a uniformity in regards to what the individual claimants would have to put forward. I don't think at all, having reviewed Rule 2–231, having reviewed the case law, and having reviewed this individual case, that a class action certification would be appropriate.

I really don't see that Anthony Frazier is a class plaintiff. And as I said earlier, I do think that he has been made whole. So I don't think that he is, has really any interest in common with the other yet to be identified prospective claimants.

As to the motion for summary judgment, the court said:

Now, in regards to the motion for summary judgment, and as an alternative, I believe that the defendants were arguing that the claim was moot. And certainly, I think I would agree with the fact that the claim is somewhat moot, because what was being asked for really pertains to the class motion. And it says, "Demand judgment for the class plaintiffs, members of his class," and then it goes on, the prayers for relief say "compensatory damages in an amount equal to the cost of all of the Ford extended service plans." Well that's been worked out already. That has been provided to this individual plaintiff.

---

**5.** The Circuit Court also denied Mr. Frazier's motion to compel discovery, and denied Crystal Ford's motion for a protective order on the grounds that it was moot. Mr. Frazier appealed the ruling on his motion to compel. The Court of Special Appeals did not reach that issue on the basis that it was moot given its ruling on the other issues on appeal. Neither discovery motion is before us.

"Appropriate injunction to declaratory relief to protect this class." That's really not appropriate because I've denied the motion—actually, I granted the motion to deny the class certification.

"Punitive damages," that's clearly not appropriate.

On September 3, 2008, a hearing was held as to the appropriate award for attorney's fees before another judge of the Circuit Court. At this hearing, the court was informed that Crystal Ford had contacted other customers who had purchased warranties to ensure that the warranties conformed to the representations made at the time they were sold. (According to Crystal Ford's counsel, this process was half completed at the time of the February hearing on the motion for summary judgment). The Circuit Court determined that the efforts of counsel for Mr. Frazier to obtain class certification had helped motivate Crystal Ford to correct the warranties of other members of the putative class. The court decided that, even though class certification had ultimately been denied, those efforts should be given weight in the award of attorney's fees. The court therefore granted Mr. Frazier attorney's fees for all of the work done by his counsel both before and after Crystal Ford had tendered him individual relief.

*Appeal*

Both parties appealed to the Court of Special Appeals. That court, in a published opinion, affirmed the Circuit Court rulings. *Frazier v. Crystal Ford Isuzu, Ltd.*, 200 Md.App. 285, 27 A.3d 583 (2011). Both parties then sought review by this Court, which we granted.

## Discussion

*Whether a Tender of Relief to a Prospective Class Representative Prior to Class Certification Requires Denial of Class Certification*

*Class Actions*

The Maryland Rules allow for an action to be litigated as a class action when there are questions of law or fact common to

a group of potential litigants who are too numerous to be joined as parties to the action. Maryland Rule 2–231(a).[6] One important purpose of this procedural mechanism is to allow a remedy for modest individual claims. "The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

■ Not anyone can prosecute a class action, however. Under the rule, a plaintiff who seeks to prosecute a class action—to act as the "class representative"—must satisfy certain prerequisites. *See* Maryland Rule 2–231(a) (requiring that the representative's claim be "typical" of the class and that the representative "fairly and adequately" protect the interests of the class). The case may only proceed as a class action if certified by the court. Maryland Rule 2–231(c).[7]

---

**6.** The Maryland rule is based on Rule 23 of the Federal Rules of Civil Procedure, as the latter was significantly revised in 1966.

**7.** The rule sets forth certain criteria to be met as a prerequisite to certification:

(b) Unless justice requires otherwise, an action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding a declaratory relief with respect to the class as a whole, or

And the prosecution of the action is subject to significant oversight by the court.[8] Maryland Rule 2–231(f).

*"Picking off" the Prospective Class Representative*

In this case, the complaint alleges that Crystal Ford, an automobile dealer, misrepresented the term of an extended manufacturer's warranty that Mr. Frazier purchased from the dealer for his car. According to the complaint, Mr. Frazier brought the problem to the attention of Crystal Ford both personally and through counsel, but the dealer took no action to remedy the problem. If Mr. Frazier's experience reflected the dealer's practice with respect to extended warranties, that practice would have a significant impact on other purchasers for whom recourse to legal remedy would not be economically feasible. It is undisputed that, once Mr. Frazier filed a class action complaint, the dealer took the offensive, tendered individual damages to Mr. Frazier and, based on that tender (which apparently was declined by Mr. Frazier), argued that Mr. Frazier could not prosecute a class action. The Circuit

---

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions,

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum,

(D) the difficulties likely to be encountered in the management of a class action.

Maryland Rule 2–231(b).

8. One may be wary of class action settlements that generate a pot of money for attorneys, provide only minuscule damages to class members, and otherwise absolve a defendant of liability to injured parties. *See, e.g., Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir.2000). The rules require judicial vigilance to avoid such abuses. *See* Maryland Rule 2–213(h) (dismissal or compromise of class action subject to court approval). In any event, this case concerns the circumstances under which a class action may be prosecuted, not those under which it may be settled.

Court accepted that reasoning and denied class certification on the ground that the tender of individual damages disqualified Mr. Frazier from representing the class.[9]

The Court of Special Appeals affirmed that decision and essentially held that, in certain circumstances, a defendant may abort a class action prior to class certification by tendering individual damages to the plaintiff who initiates the case— even if that tender is declined and regardless of whether the claims are amenable to class litigation or the individual plaintiff would otherwise qualify as a class representative. This allows a defendant in such a case to moot a meritorious class action by "picking off" the putative class representative.

*Standard of Review of Certification Decision*

A circuit court's order to grant or deny class certification is to state "findings and reasons" for the determination, presumably to facilitate later review. Maryland Rule 2–231(c). Such a decision is ordinarily reviewed for abuse of discretion based upon the "recognition that the basis of the certification inquiry is essentially a factual one, and thus, deference is due." *Creveling v. GEICO*, 376 Md. 72, 90, 828 A.2d 229 (2003). A less deferential standard of review applies when there is a question whether the court applied the proper legal standard for certification. *Id.* ("whether the trial court used a correct legal standard ... is a question that we review *de novo* "); *see also Philip Morris v. Angeletti*, 358 Md. 689, 726, 752 A.2d 200 (2000).

In this case, the Circuit Court did not articulate its decision on certification as an application of the criteria of Rule 2–231

---

9. The court also referred to a lack of "uniformity"—presumably referring to whether there existed questions of law or fact common to class members. Crystal Ford had argued that common issues did not predominate; however, the trial court appeared to be focused on the fact that Mr. Frazier's had been "made whole" and therefore had no "interest in common" with the other members of the class. At the same time, the court denied Mr. Frazier's motion for discovery related to class certification issues. The Court of Special Appeals did not address the "uniformity" question. 200 Md.App. at 298 n. 4, 27 A.3d 583.

to the claims of potential class members. The only operative fact mentioned in the Circuit Court's decision was Crystal Ford's tender of individual relief to Mr. Frazier. The legal issue before us is thus whether that tender precluded certification of this action as a class action with Mr. Frazier as the representative plaintiff.

*Creveling*

This Court previously discussed, but did not decide, this issue in *Creveling, supra.* Although the Court affirmed a denial of class certification in that case for other reasons,[10] it noted that mootness is a "more flexible" concept in the context of class action litigation. 376 Md. at 83–87 n. 3, 828 A.2d 229. The Court outlined, in a lengthy footnote, the disparate approaches that courts in other jurisdictions had taken when a defendant, at various stages of the case, attempts to moot a class action by tendering individual damages to the plaintiff who seeks to represent the class. *Id.* It described four different holdings reflected in the case law: (1) the entire action should be dismissed if the individual plaintiff's claims are satisfied *before class certification;*[11] (2) the entire action should be dismissed if individual relief is tendered to the named plaintiff *before the filing of a motion for class certification;*[12] (3) the mootness of a named plaintiff's claim does not automatically moot the class action[13]—*i.e.,* the entire action should not necessarily be dismissed; and (4) satisfaction of the named plaintiff's claim after a denial of class certification does

---

10. The Court affirmed the trial court's determination that there was a lack of commonality among the claims of the individual members of the putative class—a key factor under Maryland Rule 2–231 in whether a class should be certified.

11. *E.g., Cruz v. Farquharson,* 252 F.3d 530, 533 (1st Cir.2001); *DeCoteau v. Nodak Mut. Ins. Co.,* 636 N.W.2d 432, 437 (N.D.2001)

12. *E.g., Yu v. IBM,* 314 Ill.App.3d 892, 247 Ill.Dec. 841, 732 N.E.2d 1173, 1178–79 (2000).

13. *E.g., Encarnacion v. Barnhart,* 180 F.Supp.2d 492, 498 (S.D.N.Y. 2002); *Liles v. Am. Corrective Counseling Servs.,* 201 F.R.D. 452, 455 (S.D.Iowa 2001).

not bar appeal of that denial [14]—and presumably would not bar prosecution of the class action if the denial is overturned on appeal.

In its opinion in *Creveling,* this Court explicitly did not choose among these approaches, but emphasized that "our restraint under the circumstances of this case does not constitute an endorsement of tendering payment to named plaintiffs with the goal of annulling class action litigation.... '[T]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or ... against their will, deserves short shrift. Indeed, were it so easy to end class actions, few would survive.'" *Creveling,* 376 Md. at 83–87 n. 3, 828 A.2d 229 (*quoting Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd on other grounds,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)).

*Assessing the Consequences of a Tender of Individual Relief*

While a rule that a defendant may moot a putative class action by tendering individual damages prior to certification of the class is a bright line rule, it is not a wise one. The circumstances of this case may illustrate why. If we accept the facts as alleged in the complaint, the automobile dealer made no effort to rectify the situation until the class action complaint was filed, but then immediately took action to moot it by tendering individual damages to the plaintiff shortly after the complaint was filed and before the plaintiff had any reasonable opportunity to seek class certification or to conduct discovery addressed to the merits of class certification.[15] If all a defendant need do to defeat a class action is to satisfy the class representative's claim immediately after suit is filed, many meritorious class actions will never get off the ground.

---

**14.** *E.g., United States Parole Commission v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

**15.** In many situations, the information critical to merits of class certification will be solely in the possession of the defendant.

It will be particularly tempting to "pick off" a putative class representative in cases where the underlying conduct affected many people but each claim, including the class representative's, is small or moderate in size—a type of case for which the class action procedure was devised.[16]

Perhaps for that reason, in recent years courts in other jurisdictions have held that, even prior to the filing of a motion for class certification, an offer of judgment for the full amount of the putative representative's individual claim does not automatically moot the class claims. *E.g., Pitts v. Terrible Herbst, Inc.* 653 F.3d 1081 (9th Cir.2011); *Lucero v. Bureau of Collection Recovery, Inc.,* 639 F.3d 1239 (10th Cir.2011); *Weiss v. Regal Collections,* 385 F.3d 337 (3d Cir.2004); *Jackson v. Southern Auto Finance,* 988 So.2d 721 (Fla.Ct.App. 2008); *cf. Sandoz v. Cingular Wireless, LLC,* 553 F.3d 913 (5th Cir.2008) (offer of judgment to representative plaintiff does not moot proposed "collective action" under federal Fair Labor Standards Act); *but see Barber v. American Airlines, Inc.,* 241 Ill.2d 450, 350 Ill.Dec. 535, 948 N.E.2d 1042, 1046 (2011) (tender of individual relief to prospective class representative prior to filing of motion for class certification required dismissal of complaint).

*Pitts v. Terrible Herbst, supra,* is illustrative. In that case, Pitts filed a class action lawsuit against his employer, Terrible Herbst, alleging violations of state and federal labor laws and breach of contract. Pitts then sought discovery of information concerning potential class members, Terrible Herbst refused to comply, and Pitts filed a motion to compel discovery. While that motion to compel was pending, Terrible Herbst tendered Pitts an offer of judgment of individual damages and attor-

---

16. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

ney's fees [17]—which Pitts declined—and then moved to dismiss the case. Although the district court held that a tender of individual damages does not necessarily moot a class action, it found that Pitts had failed to file a motion to certify a class in a timely manner. It held that the failure to do so rendered the case moot [18] and ordered the defendant to pay the tendered settlement.

On appeal, the Ninth Circuit held that a court should not dismiss a class action as moot when a defendant attempts to pick off a prospective class representative before a motion for certification can reasonably be filed:

> If the named plaintiff can still file a timely motion for class certification, the named plaintiff may continue to represent the class until the district court decides the class certification issue. Then, if the district court certifies the class, ... the case may continue despite full satisfaction of the named plaintiff's individual claim because an offer of judgment to the named plaintiff fails to satisfy the demands of the class. Conversely, if the district court denies class certification, ... the plaintiff may still pursue a limited appeal of the class certification issue. Only once the denial of class certification is final does the defendant's offer—if still avail-

---

**17.** The offer was made pursuant to Rule 68 of the Federal Rules of Civil Procedure, which encourages settlements by shifting costs in certain circumstances to a party who declines a pre-trial settlement offer. Under the rule, a defendant may make a pre-trial offer of judgment to a plaintiff. If the plaintiff does not accept the offer and does not obtain a more favorable result at trial, the plaintiff is liable for post-offer costs. There is no equivalent cost-shifting provision in the Maryland rules.

**18.** The court dismissed the case for lack of subject matter jurisdiction under Article III of the federal Constitution, under which the federal judicial power extends to "cases or controversies." Relying on several Supreme Court decisions, the Ninth Circuit concluded that the "case or controversy" requirement could be satisfied by the "relation back" of class certification to the filing of the complaint in appropriate circumstances. *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). We, of course, need not address this issue.

able—moot the merits of the case because the plaintiff has been offered all that he can possibly recover through litigation.

653 F.3d at 1092 (citations omitted).

The Ninth Circuit next considered whether Pitts had waited too long to file a motion for class certification. It noted that Pitts had sought discovery which the defendant had refused to answer and that, at the time the case was dismissed, "the court had not yet ruled on his motion to compel the production of certain documents that, in his view, were crucial to the class certification decision. Pitts repeatedly and timely informed the court—in his motion to compel, at the hearing held for this motion, and in his motion to extend the initial discovery deadline—that he was awaiting the court's ruling prior to filing a motion for class certification. The court, however, never ruled on the motion to compel." 653 F.3d at 1092–93. The appellate court reasoned that, in the absence of a ruling on the motion to compel or notice to the plaintiff that he would be expected to file a motion for class certification by a certain date without such a ruling, he could not be faulted for failing to file a timely certification motion. *Id.* The court summarized:

Under these circumstances—where the court had extended the initial discovery deadline at the time of its ruling, where a motion to compel the production of documents allegedly crucial to the class certification decision had been filed well in advance of the initial discovery deadline and was still pending, where neither the local rules nor the court's own scheduling order imposed a deadline for seeking class certification, and where the scheduling order actually suggested that a motion for class certification could be filed even after the end of discovery—the district court abused its discretion in finding that Pitts could no longer file a timely motion to certify a class.

*Id.*

In our view, the better rule is to adopt the approach reflected in *Pitts* and the other cases cited above and hold that

a tender of individual relief to the putative class representative does not moot a class action if the individual plaintiff has not had a reasonable opportunity to seek class certification, including any necessary discovery.[19] That determination will require a careful assessment by a trial court. Because the Circuit Court in this case apparently believed that the tender of individual relief prior to class certification, by itself, mooted the class action, we will remand the case for reconsideration by the Circuit Court. On remand, the Circuit Court can determine whether Mr. Frazier has had an adequate opportunity to file a timely motion for class certification and, if it permits him to file such a motion, articulate "findings and reasons" related to the criteria of Rule 2–231 as to whether or not a class should be certified.

*Whether Punitive Damages May be Awarded if a Defendant Has Tendered Compensatory Damages*

In his complaint Mr. Frazier sought an award of punitive damages on behalf of himself and other prospective class members with respect to the fraud count of his complaint.[20] After Crystal Ford tendered compensatory relief to Mr. Frazier, it argued that, as a result, his claims for additional individual relief were moot. The Circuit Court awarded summary judgment with respect to the remainder of his claim for punitive damages.

---

**19.** *See Lucero, supra,* 639 F.3d at 1250 (in the absence of undue delay in filing a motion for class certification, "a named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion"); *Weiss, supra,* 385 F.3d at 347–49 (stating that "reference to the bright line event of the filing of the class certification may not always be well-founded" and holding that a class action is not mooted by an offer of individual judgment in the absence of undue delay in filing the certification motion).

**20.** Punitive damages are not available in a private cause of action under the Consumer Protection Act. *Hoffman v. Stamper,* 385 Md. 1, 49, 867 A.2d 276 (2005).

 An award of punitive damages may be made in a case of fraud when the defendant acts with "actual malice"—that is, makes a misrepresentation with intent to deceive and "actual knowledge" of the falsity of the representation. *See Hoffman v. Stamper*, 385 Md. 1, 41–43, 867 A.2d 276 (2005) (distinguishing "actual knowledge," including a "wilful refusal to know," from the lesser standard of "reckless indifference to the truth"). In general, there must be an underlying compensatory damages award with respect to a particular injury in order for a fact-finder to award punitive damages for that injury. *Caldor, Inc. v. Bowden*, 330 Md. 632, 662, 625 A.2d 959 (1993). In *Caldor*, this Court held that there must be a compensatory damages foundation for each count with respect to which punitive damages are awarded; the Court rejected an argument that an award of compensatory damages on one count of a multi-count complaint could support an award of punitive damages as to other counts. *Id.* As the Court noted, "one of the purposes of punitive damages is to punish the wrongs of the defendant. The requirement of a compensatory damages foundation protects defendants from being punished for acts that the trial court determines the defendant did not commit." *Id.* at 663, 625 A.2d 959.

In this case, the Circuit Court concluded that punitive damages were "clearly not appropriate," though that court did not explain its conclusion. On appeal, the Court of Special Appeals affirmed that conclusion on the basis that no further compensatory damages could be awarded, as Mr. Frazier had already been tendered the full amount of his actual damages. Citing *Caldor* and similar cases, the intermediate appellate court reasoned that the tender eliminated the foundation of compensatory damages that is a prerequisite to an award of punitive damages. That extrapolation of the rationale of *Caldor*, however, is unwarranted.

 An issue is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy that the court can provide. *Attorney General v. Anne Arundel*

*County School Bus Contractors Ass'n.,* 286 Md. 324, 327, 407 A.2d 749 (1979) (dismissing an appeal as moot). Courts generally decide whether a matter is moot as a result of a tender of relief by examining whether the tender encompasses *all* of the relief to which a party may be entitled. *Compare Holstein v. City of Chicago,* 29 F.3d 1145 (7th Cir.1994) (defendant's offer to pay all costs incurred by plaintiffs as a result of admittedly illegal towing of plaintiffs' vehicles meant that "there is no dispute over which to litigate") *with Greisz v. Household Bank,* 176 F.3d 1012 (7th Cir.1999) (where a tender only relates to one claim in the complaint, dismissal is improper). In this case, the question is whether Mr. Frazier may have been entitled to punitive damages.

 If a circuit court determines that a plaintiff has satisfactorily pled facts that would support a finding of fraud accompanied by actual malice, then a tender equal to the demanded compensatory damages falls short of the maximum award that a plaintiff could expect to receive at a trial. While it may be that the plaintiff's injury has been remedied, the plaintiff's claim has not necessarily been fully satisfied. Moreover, as punitive damages are designed to deter future misbehavior by the wrongdoer or others, *see Caldor,* 330 Md. at 663, 625 A.2d 959, a tender of compensatory damages alone may not achieve the deterrent effect for which punitive damages are intended. Where punitive damages are appropriately demanded, a pretrial tender of compensatory damages does not fully satisfy the claim and does not preclude an award of punitive damages. Such a tender is merely an offer of settlement.

 An award of punitive damages in this case may well be, as the Circuit Court stated, inappropriate. That determination, however, must rest on the facts of this case measured against the law of punitive damages.[21] An award of

---

**21.** Crystal Ford argued that the facts pled in the complaint could not support a finding of malice. The practices alleged could be the result of negligence or intentional wrongdoing. The complaint alleges that Crystal Ford's actions were done "knowingly and with intent to de-

punitive damages is not foreclosed by a post-complaint tender of compensatory damages.

*Whether an Award of Attorney's Fees May Encompass Efforts Subsequent to Tender*

 As the Court of Special Appeals correctly indicated, a trial court has a significant degree of discretion in determining a reasonable attorney's fee award under a fee-shifting statute such as the Consumer Protection Act. In this case, the Circuit Court relied upon a decision of the Court of Special Appeals in a case concerning an award of attorney's fees under the Consumer Protection Act and identified the following factors, derived from Rule 1.5(a) of the Maryland Lawyers' Rules of Professional Conduct, to assess the reasonableness of the requested award:

- the time and labor involved or required;
- the novelty and difficulty of the questions involved;
- the skill requisite to perform the legal services properly;
- the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
- the amount involved and the results obtained;
- the time limitations imposed by the client or by the circumstances;
- the nature and length of the professional relationship with the client;
- the experience, reputation, and ability of the lawyer performing the services;
- whether the fee is fixed or contingent.

*See Blaylock v. Johns Hopkins Federal Credit Union,* 152 Md.App. 338, 353–54, 831 A.2d 1120 (2003).[22] Applying those

---

fraud." Whether the requisite intent for punitive damages existed would ordinarily be a matter for trial, at which intent may be proven circumstantially. *Henderson v. Maryland Nat'l Bank,* 278 Md. 514, 520, 366 A.2d 1 (1976).

**22.** In *Blaylock,* the intermediate appellate court addressed the issue of whether a consumer's settlement with a credit union, without adjudica-

factors, the Circuit Court awarded Mr. Frazier $20,950.52 in attorney's fees.

As it did in the Circuit Court, Crystal Ford appears not to contest that Mr. Frazier was entitled to some award of attorney's fees under the Consumer Protection Act, CL § 13–408(b).[23] Nor has Crystal Ford appeared to contest the reasonableness of the fees with respect to the services provided. Rather, it disputes only the degree to which Mr. Frazier's attorney's fees should be reimbursed. Crystal Ford asserts that its liability should be capped at $3,204—the amount of attorney's fees incurred by Mr. Frazier up to the time of tender. Following the tender, the dealership argues, Mr. Frazier pursued "fruitless" claims through "excessive lawyering" by his attorney. It asserts that the trial court committed an error of law in taking into account the efforts of Mr. Frazier's attorney after the tender of individual relief. It relies on a recent case in which the Court of Special Appeals reduced the amount of an attorney's fee award to account for the prevailing party's "relative contribution to causing unnecessary litigation." *Friolo v. Frankel,* 201 Md.App. 79, 122, 28 A.3d 752, 778, *cert. granted,* 424 Md. 54, 33 A.3d 981 (2011).[24]

Crystal Ford relies on its post-suit tender of compensatory damages to Mr. Frazier as necessarily limiting Mr. Frazier's entitlement to attorney's fees for any subsequent actions. However, as Crystal Ford has conceded, in response to the

---

tion of the credit union's fault, rendered the consumer the prevailing party for the purpose of attorney's fees. Rejecting the credit union's appeal of the award of attorney's fees, the Court of Special Appeals concluded that the prerequisite of § 13–408(b)—that the party who brings an action under the Consumer Protection Act be "awarded damages"—should not be narrowly read to require a judgment; rather, the party may "achieve victory" by a court-approved settlement.

**23.** Before the Circuit Court, Crystal Ford also contended that Mr. Frazier was not entitled to an award of attorney's fees because the dealership had not acted with scienter. On appeal, Crystal Ford conceded that attorney's fees could be awarded, in light of the fact that it had not tendered relief to Mr. Frazier until after suit had been filed.

**24.** Although this Court granted a writ of certiorari in *Friolo v. Frankel,* a subsequent bankruptcy filing stayed further litigation of that case.

filing of Mr. Frazier's complaint, it undertook significant measures to identify other customers who had received warranties with shorter terms than promised and to provide those customers with revised warranties. While those efforts might well someday form the basis of an argument against an award of punitive damages, they also support the Circuit Court's decision to award attorney's fees to Mr. Frazier for the efforts of his counsel throughout the litigation.

As the Circuit Court reasoned, under the circumstances of this case, Crystal Ford's concessions illustrate that Mr. Frazier lost a battle—in that the Circuit Court granted Crystal Ford's motions for summary judgment and to deny class certification—but ultimately won the war, as it is undisputed that his litigation resulted in the revision of warranty contracts by Crystal Ford to match its representations and the expectations of its customers.[25] We agree with the Court of Special Appeals that the Circuit Court acted within its discretion when it considered Crystal Ford's correction of extended warranties purchased by other customers as within "the results obtained" by the efforts of Mr. Frazier's attorney. This seems particularly appropriate in a case under the Consumer Protection Act.[26] Accordingly, the attorney's fee award

---

**25.** Crystal Ford directs us to several federal cases in which the court considered whether an attorney's fee award to a prevailing plaintiff should be reduced because the plaintiff did not succeed in all respects. *See Nigh v. Koons Buick Pontiac GMC, Inc.,* 478 F.3d 183 (4th Cir. 2007); *de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 235 (1st Cir.1990); *Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.,* 2011 WL 6444980, 2011 U.S. Dist. LEXIS 147032 (D.Md. Dec. 20, 2011). None of these cases persuades us that the Circuit Court should have disregarded the prevailing "practical results" conceded by Crystal Ford.

**26.** The General Assembly enacted the Consumer Protection Act in order to establish "minimum statewide standards for the protection of consumers across the State." CL § § 13–102(b)(1), 13–103(a). The 1986 amendment of the Act to include a private cause of action was designed "to improve the enforcement" of the Act for the benefit of those consumers. *See* Report of Senate Judicial Proceedings Committee concerning Senate Bill 551 (March 7, 1986).

was appropriate under § 13–408(b) of the Consumer Protection Act.[27]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART. THIS CASE IS REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

HARRELL and BATTAGLIA, JJ., dissent.

BATTAGLIA, J., dissenting, in which HARRELL, J., joins.

The majority has developed a paradigm that will contribute to confusion among trial courts regarding class certification, tender of damages, and the appropriateness of punitive damages when compensatory damages cannot be awarded, so I respectfully dissent. The better approach to resolving the issues in this case is to determine whether Mr. Frazier was entitled to punitive damages, and then, whether the class action should have been dismissed, because the appropriate focus is whether the entire relief sought by Mr. Frazier had been tendered by Crystal Ford.

The parties disagree as to whether Crystal Ford's tender was sufficient to moot the claims, focusing on the tender's effect on Mr. Frazier's demand for punitive damages under his common law fraud count.

Mr. Frazier contends before us that the tender of only the compensatory damages demanded did not provide him with the full relief to which he was entitled, and so, it was not

---

**27.** As noted above we are remanding this case for further proceedings that may or may not result in the continuation of the class action Mr. Frazier seeks to prosecute. If Mr. Frazier should seek an additional award of attorney's fees in the future, the Circuit Court's consideration of such a request should take into account the factors set forth in Rule 1.5(a) and this Court's prior decisions concerning the award of attorney's fees. *E.g., Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005) (award of attorney's fees permissible with respect to Consumer Protection Act count, but not fraud count); *Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003) (method for determining reasonable fee).

sufficient to render his causes of action moot. He argues that punitive damages were not rendered unavailable by the lack of an award of compensatory damages in this case, because Crystal Ford's admission that it had committed the alleged wrongs by tendering the requested compensatory damages obviated the need for a formal award.

Crystal Ford responds by arguing that Mr. Frazier was afforded all of the compensatory damages he sought in his complaint, such that he could not be awarded any more compensatory damages by a trier of fact, rendering punitive damages unavailable as a matter of law. Crystal Ford asserts that, because of the unavailability of punitive damages, it tendered to Mr. Frazier all the relief to which he was entitled and "tender of payment by a defendant of the amount sought as damages in litigation entitles the defendant to dismissal, as the plaintiff's claim has been rendered moot by the tender," relying on *A.A. Allen Revivals, Inc. v. Campbell,* 353 F.2d 89 (5th Cir.1965) (per curiam).

Resolution in cases involving the issue of whether the tender of relief after suit is filed renders a complaining party's claims moot depends on whether the tender is of all or less than all of the relief to which the complaining party is entitled. Cases are legion that post-suit tender of all the relief a party is entitled to in a complaint is sufficient to moot the case. *E.g. Holstein v. City of Chicago,* 29 F.3d 1145 (7th Cir.1994); *A.A. Allen Revivals, Inc. v. Campbell,* 353 F.2d 89 (5th Cir.1965) (per curiam); *Yu v. International Business Machines Corp.,* 314 Ill.App.3d 892, 247 Ill.Dec. 841, 732 N.E.2d 1173 (2000). In *Holstein v. City of Chicago,* 29 F.3d 1145 (7th Cir.1994), for example, the Court of Appeals for the Seventh Circuit consolidated two appeals, one by Brian Grove and the other by Robert Holstein, from dismissals of claims for costs associated with allegedly improper towing by the City of Chicago. *Id.* at 1146. Mr. Grove's car was towed on two successive evenings while he was attending baseball games; he contested the validity of the tows at an administrative hearing, pursuant to a local ordinance, but lost. *Id.* Thereafter, Mr. Grove filed a class action complaint seeking to have the towing statute and

the post-tow hearing procedures declared unconstitutional and for the return of the fees paid for the towing and storage. *Id.* at 1146–47. After Mr. Grove filed suit, the City informed him that it had determined that the tows were inappropriate and tendered to him all the costs he paid as a result of the improper tows; Mr. Grove, however, rejected the tender. *Id.* The federal district court judge granted summary judgment to the City then, based on mootness. *Id.* at 1147.

The Seventh Circuit agreed. In so holding, the Court stated, "Grove may not spurn this offer of all the damages he is owed and proceed to trial. *See Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 878 (7th Cir.1987). 'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake.' " *Id.* at 1147, quoting *Rand v. Monsanto Co.,* 926 F.2d 596, 598 (7th Cir. 1991).

In *A.A. Allen Revivals v. Campbell,* A.A. Allen Revivals filed a complaint against the United States to recover taxes erroneously collected, seeking a refund of the taxes paid with interest. 353 F.2d 89, 90 (5th Cir.1965) (per curiam). After the complaint had been filed, the Government tendered to A.A. Allen Revivals the full amount of the taxes collected with interest, which A.A. Allen Revivals did not accept. *Id.* The trial judge then dismissed the complaint as moot because A.A. Allen had received the relief it sought in its complaint. *Id.* The Court of Appeals for the Fifth Circuit affirmed, holding that the tender of the full amount sought in the complaint was sufficient to justify dismissal of the action. *Id.*

In *Yu v. International Business Machines Corp.,* 314 Ill. App.3d 892, 247 Ill.Dec. 841, 732 N.E.2d 1173 (2000), the Illinois intermediate appellate court considered the dismissal of a complaint of a health care practitioner who had purchased a medical device in 1996 believing that it was "year 2000(Y2K) compliant," when, in fact, it was not. *Id.,* 247 Ill.Dec. 841, 732 N.E.2d at 1175. After being notified that the upgrade to

make the device "year 2000(Y2K) compliant" would cost him more than $2,000, Dr. Yu filed a class action suit against the manufacturer for compensatory damages for breach of warranty and violations of the Illinois consumer protection statute. *Id.* After suit was filed, the manufacturer tendered Dr. Yu a free copy of the software upgrade, which he accepted. *Id.*, 247 Ill.Dec. 841, 732 N.E.2d at 1176. The suit was then dismissed as moot, *id.*, 247 Ill.Dec. 841, 732 N.E.2d at 1177, and the Illinois intermediate appellate court affirmed, reasoning that Dr. Yu could not point to any damages caused by the alleged problem other than the money he would have had to spend to upgrade his software, thereby rendering moot his case. *Id.*, 247 Ill.Dec. 841, 732 N.E.2d at 1178–79.

Conversely, it is also well-established that tender made following the filing of a lawsuit, which is less than the full relief to which a complaining party is entitled, is not sufficient to render the case moot. In *Greisz v. Household Bank*, the plaintiff purchased a furnace-air conditioner using a credit card issued by Household Bank. 176 F.3d 1012 (7th Cir.1999). When Ms. Greisz received her statement, it listed the purchase price of the unit as $1,070 more than she believed it should have been. *Id.* at 1035. Ms. Greisz refused to pay any part of the charge and filed suit, alleging various violations of federal and state law on behalf of herself and a putative class. *Id.* The United States District Court dismissed all of her claims except part of one count under the Truth in Lending Act, Section 1632(a) of Title 15, United States Code, that entitled her to $1,000 in damages if she could prove a violation of the Act. *Id.* at 1039–40. Thereafter, the bank tendered to her $1,200 and reasonable costs and attorneys' fees. Ms. Greisz spurned this offer, and the District Court granted summary judgment to the bank and dismissed the action on the ground that its tender eliminated the case or controversy. *Id.* at 1014.

The Seventh Circuit affirmed, holding that, because Ms. Greisz did not allege any injury related to the alleged violations of the Truth in Lending Act, she was entitled to only statutory damages in the amount of $1,000 and reasonable

costs and attorneys' fees, and the bank's tender of more than Ms. Greisz could have recovered even were she to have been completely successful eliminated any actual controversy for the court to adjudicate. The Court noted, however, that the Bank's tender only related to the relief for one claim in the complaint, and so the dismissal was not actually proper because it was not "an offer to settle Greisz's *entire* case against the bank," but affirmed the trial court's ruling because the plaintiff waived that argument by not raising it. *Id.* at 1016 (emphasis in original).

In the instant case, the question before us is whether Crystal Ford's tender of compensatory damages rendered punitive damages under Mr. Frazier's fraud claim unavailable as a matter of law. The Court of Special Appeals answered this question in the affirmative, relying on our jurisprudence that punitive damages must have a foundation in an award of compensatory damages and on the fact that, because it was undisputed that Mr. Frazier received all of the compensatory damages that he sought in his complaint, "there were no further compensatory damages that Frazier could recover at a trial in the instant case." *Frazier v. Castle Ford, Ltd.,* 200 Md.App. 285, 296, 27 A.3d 583, 589 (2011).

Punitive damages, under the Count of common law fraud, are governed by various basic principles. Their purpose is to punish a defendant for certain tortious conduct committed with actual malice, *Ellerin v. Fairfax Savings, F.S.B.,* 337 Md. 216, 241–42, 652 A.2d 1117, 1129–30 (1995), and they are not available, absent an award of compensatory damages. *Caldor, Inc. v. Bowden,* 330 Md. 632, 661, 625 A.2d 959 (1993); *see also Philip Morris Inc. v. Angeletti,* 358 Md. 689, 773, 752 A.2d 200, 246 (2000); *Shabazz v. Bob Evans Farms, Inc.,* 163 Md.App. 602, 639, 881 A.2d 1212, 1233–34 (2005). Clearly, the tender in the present case was not an "award" as a result of a court approved settlement,[1] nor was any judgment regarding

---

1. Crystal Ford relies on *Consolidated Construction Services, Inc. v. Simpson,* 372 Md. 434, 813 A.2d 260 (2002) to support its argument that Mr. Frazier was not awarded compensatory damages at trial as a

the compensatory damages ever entered in favor of Mr. Frazier at any time, by any court.[2] Each party agrees that Crystal Ford paid Ford Warranty an amount of money sufficient to extend Mr. Frazier's warranty to the date alleged to be the end date, resulting in Ford sending Mr. Frazier a check for the costs of his car repair except for the agreed-upon deductible. At the motions' hearing in this case, Mr. Frazier's attorney conceded that the tender represented all of the compensatory damages sought:

> THE COURT: What damages is your client alleging at the present time? Because my understanding is that he has been, everything that he asked for in the complaint, other than attorneys' fees, have been addressed, because he received his extended warranty, the repair bill that he had incurred when he didn't have the extended warranty coverage was paid, minus the $100 deductible.
>
> FRAZIER' S COUNSEL: Yes.

In analyzing the impact of a defending party's tender of compensatory damages on a demand for punitive damages, I find persuasive the reasoning of the Illinois intermediate appellate court in a series of cases regarding tender, to include: *Hayman v. Autohaus on Edens, Inc.*, 315 Ill.App.3d 1075, 248 Ill.Dec. 721, 734 N.E.2d 1012 (2000), *Jones v. William Buick, Inc.*, 337 Ill.App.3d 339, 271 Ill.Dec. 716, 785 N.E.2d 910 (2003), and *Bates v. William Chevrolet/Geo, Inc.*, 337 Ill.App.3d 151, 271 Ill.Dec. 402, 785 N.E.2d 53 (2003).

In *Hayman*, Mr. Hayman leased a car from Autohaus with the option to purchase the car at the end of the lease term for

result of its tender. In *Consolidated Construction Services*, we were confronted with an attorney who purported to have an attorneys' lien on settlement funds held in an escrow account. We held that the plain meaning of the statutory language, at the relevant time, of "a judgment or award that a client receives as a result of legal services that the attorney at law performs," did not include settlement funds as property to which an attorneys' lien could attach.

**2.** The effect of reducing a tender to judgment is explored in *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85 (2nd Cir.2007), and may be an avenue to avoid the consequence of mootness.

a fixed price; when he exercised the option to purchase, the price was $299 more than the figure on the lease contract. 248 Ill.Dec. 721, 734 N.E.2d at 1013. Mr. Hayman entered into the purchase contract without noticing the discrepancy but upon returning home and comparing the contracts, he immediately demanded a refund of the $299. *Id.* Autohaus informed him that the additional money was a service fee and he could either keep the car and get no refund or return it for a full refund. *Id.* Mr. Hayman immediately began preparations to file suit; Autohaus, however, reversed its position two days after Mr. Hayman made the demand and tendered the $299 fee in refund while permitting him to keep the car. Mr. Hayman spurned this offer and filed a class action complaint against the dealership in which he alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and common-law fraudulent misrepresentation and demanded attorneys' fees and punitive damages, *id.,* but the trial judge granted Autohaus's motion to dismiss, reasoning that Mr. Hayman lacked compensatory damages and, therefore, could not state a cause of action. *Id.,* 248 Ill.Dec. 721, 734 N.E.2d at 1013–14.

On appeal, Mr. Hayman argued that the tender was not sufficient to moot his claims, because he had also demanded attorneys' fees, interest, and punitive damages, all of which could have been supported by the causes of action he plead. *Id.,* 248 Ill.Dec. 721, 734 N.E.2d at 1014. The court first noted that Mr. Hayman was only appealing the dismissal of his common-law fraud and conversion counts, not his counts under the Illinois Consumer Fraud and Deceptive Business Practices Act, under which he was not entitled to attorneys' fees. *Id.*

With respect to Mr. Hayman's demand for punitive damages, the court first noted that Autohaus's tender was a complete refund for the entire amount demanded and, therefore, "there was no controversy." *Id.* The court then reasoned that "[b]ecause full payment, not a compromise, was offered to Hayman, thus mooting the controversy, the plaintiff had no right to recover compensatory damages in the trial court" and "[p]unitve damages 'are in addition to compensatory damages

and cannot be allowed unless actual damage is shown.' " *Id.,* 248 Ill.Dec. 721, 734 N.E.2d at 1015. Thus, the court held that punitive damages were not available to Mr. Hayman.

The court's analysis regarding the effect of tender on punitive damages, however, is quite different than that employed when it has considered the effect of tender on attorneys' fees. In *Bates v. William Chevrolet/Geo, Inc.,* 337 Ill.App.3d 151, 271 Ill.Dec. 402, 785 N.E.2d 53 (2003) and *Jones v. William Buick, Inc.,* 337 Ill.App.3d 339, 271 Ill.Dec. 716, 785 N.E.2d 910 (2003), cases in which the Illinois intermediate appellate court held that dismissal was not proper because the tender of only compensatory damages was not sufficient to render moot the entire case, because of the pending demand for attorneys' fees. In *Jones,* Ms. Jones purchased a car from William Buick with a down payment of $500, the balance to be financed by a lender found by William Buick; Ms. Jones was able to take immediate possession of the car. 271 Ill.Dec. 716, 785 N.E.2d at 911. Shortly after entering into the contract, Ms. Jones lost her job, and the lender found by William Buick withdrew its offer to finance the car. *Id.* Ms. Jones returned the car and demanded the return of the down payment via a demand letter from her attorney. *Id.*

William Buick refunded the $500, but Ms. Jones had already initiated the process of filing suit under the Illinois consumer protection act and for common law fraud, and did so shortly after receiving the check. *Id.,* 271 Ill.Dec. 716, 785 N.E.2d at 912. The trial court dismissed her claims as moot, given William Buick's tender of the down payment. *Id.* On appeal, William Buick relied upon *Hayman v. Autohaus on Edens, Inc.,* 315 Ill.App.3d 1075, 248 Ill.Dec. 721, 734 N.E.2d 1012 (2000), for the principle that once William Buick tendered the down payment, Ms. Jones had no injury and the claim was moot. 271 Ill.Dec. 716, 785 N.E.2d at 912. The Illinois intermediate appellate court disagreed and held that, because Ms. Jones had filed her claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, she was entitled to attorneys' fees if she were to prevail at trial, and William Buick did not tender the full amount of relief requested by

Ms. Jones, such that summary judgment was not appropriate. *Id.*, 271 Ill.Dec. 716, 785 N.E.2d at 913.

Likewise, in *Bates v. William Chevrolet/Geo, Inc.*, 337 Ill. App.3d 151, 271 Ill.Dec. 402, 785 N.E.2d 53 (2003), the same court again considered a tender that did not include attorneys' fees. *Id.*, 271 Ill.Dec. 402, 785 N.E.2d at 62. In that case, Ms. Bates had filed suit alleging common law fraud and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act related to her purchase and financing of a car, *id.*, 271 Ill.Dec. 402, 785 N.E.2d at 62, and the defending party, William Chevrolet, allegedly tendered to her a check for all the compensatory damages she requested, but it was returned unopened. *Id.*, 271 Ill.Dec. 402, 785 N.E.2d at 62. After trial, the jury awarded Ms. Bates compensatory and punitive damages. *Id.*, 271 Ill.Dec. 402, 785 N.E.2d at 55. On appeal, William Chevrolet asserted that it had tendered the compensatory damages to plaintiff's counsel, but "counsel perhaps failed to inform the plaintiff of the offer." *Id.*, 271 Ill.Dec. 402, 785 N.E.2d at 62. It argued that since the alleged tender of compensatory damages was an offer of the " 'full amount' owed to plaintiff, there remained no actual controversy and the suit was rendered moot." *Id.* The court disagreed, holding that, because the suit was filed under the Illinois Consumer Fraud and Deceptive Business Practices Act, the plaintiff was entitled to attorneys' fees, so the alleged tender was not for the full amount of relief to which she was entitled and the case should not have been dismissed as moot. *Id.*

The distinction drawn by the intermediate appellate court of Illinois between punitive damages and attorneys' fees—that attorneys' fees can accrue after the filing of a suit, while punitive damages do not—is meaningful.[3] Once post-filing of

---

3. While I need not write on the issue of attorneys' fees, I would note that, under my analysis, it would be appropriate to award attorneys' fees to Mr. Frazier, because he achieved a definite result, including for members of the putative class: Crystal Ford reformed their warranties. The majority, however, purports to remand this case to the Circuit Court for further proceedings, while at the same time awarding counsel fees. The award is without foundation, because the case is not conclud-

suit tender of compensatory damages is accomplished, attorneys' fees can accrue continuously until the matter is fully resolved, thus presenting a cognizable harm sufficient to prevent a case from having been rendered moot by post-suit tender of compensatory damages, unlike punitive damages. *See, e.g., Bates,* 271 Ill.Dec. 402, 785 N.E.2d at 62 ("Defendant failed to tender the attorney fees recoverable under section 10a(c) of the Consumer Fraud Act, and thus, failed to tender the 'full amount' owed to plaintiff."). Punitive damages, thus, should not be available as a matter of law as a result of the pre-trial tender in the present case.[4]

The next step in my analysis is Mr. Frazier's challenge to the denial of class certification. Crystal Ford's Motion to Deny Class Certification was granted primarily on the ground that the mootness of Mr. Frazier's individual claim required the dismissal of the class claims.

Courts are split as to whether a motion to certify a class is sufficient to prevent the entire action from becoming moot when the named representative's claims become moot or whether actual certification of a class is necessary, although the latter, in my estimation, clearly provides the better foundation for identifying class members and their interests. *See, e.g., Wheatley v. Board of Education of Township High School District 205,* 99 Ill.2d 481, 77 Ill.Dec. 115, 459 N.E.2d 1364 (1984) (holding that because no class was certified at the time the individual claims were dismissed, the class action was

---

ed. It is at the conclusion of those proceedings that attorneys' fees should be awarded, not after the majority determines the case should continue. When we have permitted attorneys' fees when a remand has occurred, the attorneys fees have been awarded for claims that have had finality. *Hoffman v. Stamper,* 385 Md. 1, 48–49, 867 A.2d 276, 304–05 (2005) (upholding an award of attorneys' fees, despite remanding the case, because the only claims that survived on remand did not allow for an award of attorneys' fees).

4. While I am cognizant of the fact that punitive damages are intended to punish the defendant and to deter future wrongful conduct, a defendant that acknowledges its wrong ways and chooses to pay compensatory damages without an adjudication of liability does not require further retribution.

properly dismissed); *Hayman v. Autohaus on Edens, Inc.,* 315 Ill.App.3d 1075, 248 Ill.Dec. 721, 734 N.E.2d 1012, 1015 (2000) (holding that because no class was certified at the time tender rendered moot Hayman's claims, dismissal of the entire suit was warranted); *DeCoteau v. Nodak Mutual Insurance Company,* 636 N.W.2d 432, 437 (N.D.2001) ("When a named plaintiff's individual claim becomes moot before a class has been properly certified or certification has been denied, courts generally hold dismissal of the action is required."). The rationale for this rule is that the interests of the putative class are not actually before the court until a motion for certification has been granted. *See Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532, 540 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.").

The Court of Appeals for the Second Circuit addressed the question of whether a representative plaintiff's claims being rendered moot prior to certification being granted also rendered the entire class action suit moot, in *Comer v. Cisneros,* 37 F.3d 775 (2nd Cir.1994). In that case, Jessie Comer and three others filed a class action suit alleging that the public housing and assistance programs in Buffalo, New York were discriminatory. In addressing the question of whether the class action was rendered moot by the defending parties' voluntary cessation of the alleged discriminatory activity prior to certification of the class, the court stated that, "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire class action becomes moot. In contrast, class certification will preserve an otherwise moot claim." *Id.* at 798 (citations omitted).

The Second Circuit noted that the United States Supreme Court identified two instances in which this general rule does not apply: when an intervenor steps in and when the claims are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest ex-

pires." *Id.* at 799 (internal quotation marks and citation omitted). The court went on to hold that the claims were not actually moot because the alleged harm was "capable of repetition but evading review," *id.* at 800–01, but the general rule of law holds true: where a representative plaintiff's claim has been rendered moot before certification is granted, dismissal of the entire action is warranted unless the claims fall into either of the enunciated exceptions. *See also Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir.1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the claim is not live, the Court lacks a justiciable controversy and must dismiss the claim as moot."); *Sannon v. United States*, 631 F.2d 1247, 1252 (5th Cir.1980) (holding that the dismissal of a class action suit after the representative plaintiff's claims became moot was proper, noting that, " '[b]ecause the class action was never properly certified nor the class properly identified by the District Court,' the decision that the claims of the purported representative were moot dictated the dismissal of the uncertified 'class' action as well," quoting *Bd. of School Comm'rs v. Jacobs*, 420 U.S. 128, 130, 95 S.Ct. 848, 850, 43 L.Ed.2d 74, 78 (1975) (per curiam)).

In the present case, no class had been certified prior to the tender of compensatory damages, so that the class claims were, in my view, properly dismissed.

The more appropriate line to draw in the sand with respect to the tender of relief to the named plaintiff in a class action suit is that dismissal of the action is appropriate, if the class has not been certified before the claim has been rendered moot. Essential to my view is that, from a jurisdictional standpoint, the interests of the putative class are only before the court once certification has been granted; thus, allowing a named plaintiff to continue a suit when he or she has no personal interest before the court, and the class's interests are also not before the court, leads to the absurd result of allowing a court to continue to adjudicate a case that presents no actual controversy. I dissent.

Judge HARRELL has authorized me to state that he joins this dissenting opinion.